817 F.2d 625
 55 USLW 2587, 16 Collier Bankr.Cas.2d 952,
7 Fed.R.Serv.3d 956,
15 Bankr.Ct.Dec. 1321, Bankr. L. Rep. P 71,760
 In re STANDARD METALS CORPORATION, Debtor.
Dann S. SHEFTELMAN, individually and on behalf of all others
similarly situated, Creditor-Appellant,
v.
STANDARD METALS CORPORATION, Creditors' Committee;
Securities and Exchange Commission; and National
Bank of Georgia, Appellees.
 No. 85-2783.
 United States Court of Appeals,
Tenth Circuit.
 April 20, 1987.
 
 Nicholas Chimicles of Greenfield & Chimicles, Haverford, Pa. (Robert H. Levin, of Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa. and Michael E. Romero, of Isaacson, Rosenbaum, Woods, Snow & Levy, Denver, Colo., with him on the briefs), for creditor-appellant.
 Glen E. Keller, Jr. of Davis, Graham & Stubbs, Denver, Colo. (Christopher L. Richardson and C. Randel Lewis, of Davis, Graham & Stubbs, Denver, Colo., with him on the brief), for debtor-appellee.
 Richard A. Kirby, Asst. Gen. Counsel, S.E.C., Washington, D.C. (Daniel L. Goelzer, Gen. Counsel, Paul Gonson, Sol., and Leslie E. Smith, Atty., with him on the briefs), for appellee S.E.C.
 Brent T. Johnson of Fairfield and Woods, Denver, Colo. (Stephen W. Seifert of Fairfield and Woods, Denver, Colo., with him on the brief), for appellee Creditors' Committee.
 Before BARRETT, SETH and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 This case presents a question of the availability of class action procedures to a creditor filing a claim in the bankruptcy court. Sheftelman appeals from a district court order affirming the bankruptcy court's dismissal of a proof of claim filed by Sheftelman on his own behalf and on behalf of a group of bond purchasers. We affirm.
 
 
 2
 Standard Metals Corp. (Standard) is a gold mining and milling company. Standard owns fifty percent of the shares of the National Smelting and Refining Co. (NSR). In turn, National Smelting of New Jersey (NSNJ) is a wholly-owned subsidiary of NSR. NSNJ was formed in December 1982 to acquire, renovate, and operate a lead smelting plant in New Jersey. Over six million dollars was raised for this project in February 1983 through the sale of tax-exempt industrial revenue bonds issued by the New Jersey Economic Development Authority. The sale did not resolve the financial problems of these companies: a default on the bonds was declared in January 1984, and Standard, NSR, and NSNJ all filed voluntary Chapter 11 petitions in the Bankruptcy Court for the District of Colorado on March 5, 1984.
 
 
 3
 Standard filed its schedules and statement of affairs with the bankruptcy court in April 1984. None of the purchasers of the NSNJ bonds were listed in any of these documents as possible creditors. On May 7, 1984, the court set a bar date of June 10 for the filing of claims against Standard. Notice of the bar date was sent to all of the creditors listed in the schedules filed by Standard.
 
 
 4
 Dann Sheftelman purchased six of the NSNJ bonds, having a face value of $5,000 each, in the initial public offering of the bonds. On August 30, 1984, Sheftelman filed proofs of claim in Standard's bankruptcy proceeding on behalf of himself and the class of NSNJ bond purchasers.[1] Sheftelman alleged that the purpose of the sale of the bonds had been misrepresented in violation of federal and state securities laws and that Standard had improperly benefited from the sale. Standard objected to Sheftelman's proofs of claim on November 26, arguing that the claims were impermissibly late and that a class proof of claim was not allowed in a bankruptcy proceeding. The court set a hearing date of February 5, 1985, to consider Standard's objections.
 
 
 5
 On January 10, 1985, Sheftelman filed several motions. First, he sought an extension of the time within which proofs of claim could be filed. Second, he sought an order directing that notice of the bar date be provided to the class. Third, he moved for a continuance of the February 5 hearing date. Finally, Sheftelman moved for an order that Fed.R.Civ.P. 23, governing class actions, be applicable to his claim.
 
 
 6
 Sheftelman then tried to arrange for his deposition to be taken before he left for a business trip in Portugal. He filed a notice to take a telephonic deposition on Saturday, January 19 at 10:00 AM. Two days later he amended his notice to take his deposition in person in Providence, Rhode Island, at 6:00 PM on Friday, January 25. Standard responded by requesting a protective order under Fed.R.Civ.P. 26 and an order compelling Sheftelman's attendance at the February 5 hearing. The court issued such an order on January 25, finding that it was "unduly burdensome and expensive to the estate" to attend a deposition in Rhode Island, and ordering Sheftelman to appear at the hearing or to have his deposition taken in Denver before that time. The court added that the sanction for failure to comply with that order would be the dismissal of Sheftelman's claim. Sheftelman failed to appear at the hearing on February 5 and he did not make any arrangements to have his deposition taken in Denver before that time. On March 21, the court dismissed Sheftelman's proof of claim on the alternative grounds of failure to comply with a discovery order and failure to show cause to extend the bar date. The court also held that class proofs of claim are not allowed in a bankruptcy proceeding, and therefore denied Sheftelman's motion to apply Rule 23. In re Standard Metals Corp., 48 B.R. 778 (Bankr.D.Colo.1985). The district court affirmed the orders of the bankruptcy court on October 25, 1985.
 
 
 7
 Sheftelman now appeals.[2] He argues that the dismissal of his individual claim for failure to comply with the protective order was improper and that class proofs of claim are permissible in a bankruptcy proceeding. Sheftelman further contends that neither he nor the class he seeks to represent received proper notice of the bar date, thus providing cause for the extension of the deadline for filing claims. We affirm.
 
 I.
 
 8
 Fed.R.Civ.P. 26(c)(2) allows a court, upon a showing of good cause, to issue a protective order specifying the time and place of a deposition. The trial court has great discretion in establishing the time and place of a deposition. See generally 8 C. Wright & A. Miller, Federal Practice and Procedure Secs. 2111-2112 (1970). We will reverse a protective order on appeal only if there has been an abuse of discretion. Otero v. Buslee, 695 F.2d 1244, 1247 (10th Cir.1982); In re Petroleum Products Antitrust Litig., 669 F.2d 620, 623 (10th Cir.1982). As we said in Petroleum Products:
 
 
 9
 An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling. A reviewing court should not substitute its judgment for that of a trial court. It is the unusual or exceptional case where the reviewing court will vacate a protective order entered by a trial court under Fed.R.Civ.P. 26(c).
 
 
 10
 669 F.2d at 625.
 
 
 11
 A protective order can be issued to protect a party from "undue burden or expense." Fed.R.Civ.P. 26(c). The bankruptcy court issued its protective order after Sheftelman had first scheduled a telephonic deposition for a Friday evening and then rescheduled that deposition to be in Rhode Island for a Saturday morning. The court found that "it was inappropriate to compel the debtor to incur the expense necessary to accommodate Mr. Sheftelman with his own deposition in Rhode Island." 48 Bankr. at 785. Our review of the record persuades us that the bankruptcy court did not abuse its discretion in issuing the January 23 protective order.
 
 
 12
 Sheftelman did not comply with the protective order issued by the bankruptcy court.[3] The court dismissed the proof of claim filed by Sheftelman as a sanction for this failure to comply with a court order. We must now consider whether the sanction of dismissal was appropriate in this situation.
 
 
 13
 A trial court has the power to dismiss a claim for the failure to obey a discovery order. Fed.R.Civ.P. 37(b)(2)(C). Our review of a sanction of dismissal is limited to determining whether the court abused its discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); Mertsching v. United States, 704 F.2d 505, 506 (10th Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).
 
 
 14
 The sanction of dismissal should be imposed only when a party has willfully or in bad faith disobeyed a discovery order. Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958). We have defined a willful failure as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." Patterson v. C.I.T. Corp., 352 F.2d 333, 336 (10th Cir.1965) (quoting United States v. 3963 Bottles, 265 F.2d 332, 337 (7th Cir.), cert. denied, 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959)). The courts that have concluded that the failure to comply with a discovery order was not willful have emphasized the inability of the party to comply with the order. E.g., Thomas v. Gerber Productions, 703 F.2d 353, 356 (9th Cir.1983) (dismissal was improper when failure to pay a $750 fine for not attending a deposition was due to an inability to pay). In this context, we have affirmed the sanction of dismissal where a party did not appear at a deposition at a time ordered by the court. Gates v. United States, 752 F.2d 516, 517 (10th Cir.1985). Accord Founding Church of Scientology v. Webster, 802 F.2d 1448, 1458 (D.C.Cir.1986).
 
 
 15
 Sheftelman did not appear at the hearing in Denver on February 5, nor did he make any arrangements with the debtors to have his deposition taken in Denver before that time. The motions filed by Sheftelman's attorney do not indicate precisely when Sheftelman left for his business trip in Portugal, but it appears that he did not leave until January 28. Thus, Sheftelman was aware of the protective order before he left on his trip. Sheftelman left for Portugal knowing that the bankruptcy court had ordered him to travel to Denver before February 5 and warning him that failure to do so could result in the dismissal of his claim. Sheftelman was presented with a choice between rescheduling his business trip, forfeiting his claim against Standard, or making alternative arrangements.[4] Although we might not have imposed the same demand upon Sheftelman that the bankruptcy court imposed, it is nonetheless clear that Sheftelman left for Portugal fully aware of the status of his claim, and that his decision not to travel to Denver was an "intentional failure." Patterson, 352 F.2d at 336. We therefore hold that Sheftelman willfully violated the protective order of the bankruptcy court and that the resulting dismissal of the proof of claim by the court was not an abuse of discretion.
 
 II.
 
 16
 We must next consider the effect of the dismissal of Sheftelman's individual proof of claim on the proofs of claim filed by Sheftelman on behalf of the class. Sheftelman filed his proof of claim on behalf of a class composed of all those who had purchased bonds issued for NSNJ. The bankruptcy court held that a class proof of claim was prohibited by the Bankruptcy Reform Act of 1978, 11 U.S.C. Secs. 101-151326 (hereinafter Act), and the 1983 Bankruptcy Rules, 11 U.S.C. Rules 1001-9032. The district court found that it was not necessary to consider the propriety of the bankruptcy court's decision on the availability of class proofs of claims. We conclude that we must reach this issue, and we affirm the decision of the bankruptcy court.
 
 A.
 
 17
 "As a general rule, a suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified." Reed v. Heckler, 756 F.2d 779, 785 (10th Cir.1985). There are exceptions to this general rule. In Reed, the Social Security Administration sought to withhold certain benefits because of previous alleged overpayments by the Administration. The plaintiffs brought a class action challenging this action. The district court denied certification of the class apparently because the court had held that there was no subject matter jurisdiction in the case. Before we considered the appeal from this decision, the Administration determined that there had been no overpayments by some of the named plaintiffs and waived repayment by the others. The Administration argued on appeal that the denial of class certification was therefore moot.
 
 
 18
 This court reversed the district court's holding that there was no subject matter jurisdiction. Id. at 782-85. We then addressed the question of "whether resolution of the named plaintiffs' individual claims moots a proposed class action on appeal when the district court denied certification of the class for an inappropriate reason." Id. at 785. We held that the denial of the certification of the class could not be rendered moot by the purposeful actions of the Administration. Id. at 786.
 
 
 19
 In the present case, the bankruptcy court refused to allow Sheftelman to file a class proof of claim because the court believed that the Act did not allow class proofs of claim. If we were to hold that the court was incorrect in its interpretation of the Act, the denial of class certification would have been based on an erroneous view of the law, just as the district court's erroneous finding of no subject matter jurisdiction resulted in an inappropriate denial of class certification in Reed. Therefore, if the bankruptcy court erred in its determination that class proofs of claim are not allowed, the proofs of claim for the class would not be moot notwithstanding the dismissal of Sheftelman's individual claim.[5] Reed, then, makes it necessary for us to consider whether the bankruptcy court was correct in holding that class proofs of claim are not permissible under the Act.
 
 B.
 
 20
 The SEC joins Sheftelman in arguing that class proofs of claim are permissible in a bankruptcy proceeding. We are the first circuit to address this question under the 1978 Act and the 1983 Rules.[6] We conclude that class proofs of claim violate the statutory scheme of the Act and the Rules. We therefore affirm the judgment of the bankruptcy court.
 
 
 21
 Under the Act, a creditor may file a proof of claim against a debtor in a bankruptcy proceeding. 11 U.S.C. Sec. 501(a). Congress directed that the bankruptcy rules would establish when the filing of a proof of claim is necessary. S.Rep. No. 989, 95th Cong., 2d Sess. 61, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5847. In a Chapter 11 proceeding, Bankruptcy Rule 3003(c)(2) provides that an unscheduled creditor must file a proof of claim in order for that claim to be allowed.[7] This is a stringent requirement. In re Shulman Transp. Enters., Inc., 21 B.R. 548, 551 (Bankr.S.D.N.Y.1982), aff'd, 33 B.R. 383 (S.D.N.Y.1983), aff'd, 744 F.2d 293 (2d Cir.1984); In re Society of the Divine Savior, 15 Fed.R.Serv.2d (Callaghan) 294, 298 (E.D.Wis.1971).
 
 
 22
 The Act and the Rules do not expressly permit or expressly prohibit class proofs of claim.[8] What the rules do require is that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent." Bankruptcy Rule 3001(b).[9] The import of this language is that each individual claimant must file a proof of claim or expressly authorize an agent to act on his or her behalf.
 
 
 23
 Further, a class representative cannot be considered the authorized agent of all of the creditors in a putative class. Sheftelman emphasizes that the bond purchasers were certified as a class in a civil proceeding in New Jersey after the bankruptcy court reached its decision in this case. But "consent to being a member of a class in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." In re Baldwin-United Corp., 52 B.R. 146, 148-49 (Bankr.S.D.Ohio 1985). An agent may file a proof of claim only for those individuals who have expressly authorized the agent to do so. Attempts to file proofs of claim on behalf of a class have been rejected where there was no showing that each member of the class had authorized the "agent" to file on his or her behalf. See, e.g., In re Electronic Theatre Restaurants Corp., 57 B.R. 147, 148-49 (Bankr.N.D.Ohio 1986). Rule 3001(b) allows a creditor to decide to file a proof of claim and to instruct an agent to do so; it does not allow an "agent" to decide to file a proof of claim and then inform a creditor after the fact.[10]
 
 
 24
 Sheftelman asserts that "it is inequitable and unfair to individual shareholders or bondholders who are dispersed throughout the country and who do not by themselves have the economic wherewithal to press their claims in the reorganization proceedings, to be deprived of the class action vehicle as a means of effectively asserting their interests." Brief of Appellant at 33. We agree that class action procedures can be appropriate in some instances where a large number of individual creditors have filed similar claims. See, e.g., In re REA Express, Inc., 10 B.R. 812, 813 (Bankr.S.D.N.Y.1981) (certifying a class of approximately one thousand employees who filed claims seeking unpaid holiday pay, vacation pay, severance pay, and wages). The requirement of individual filing, however, does not disappear when a large number of similar claims are involved. A class action cannot be used to evade that requirement. Class action procedures can be employed in a bankruptcy proceeding only to consolidate claims that have already been properly filed. See Note, Class Actions in Bankruptcy, 64 Tex.L.Rev. 791, 792, 799 n. 67 (1985) (arguing that class actions should be allowed in bankruptcy when efficiency and fairness warrant, but assuming that "individual proofs of claim must be filed by all class members in order to participate in any class action").
 
 
 25
 We further note that class proofs of claim are unnecessary in a bankruptcy proceeding. The historical reason for allowing a class of individuals to join in filing a common suit is to avoid a multiplicity of suits in a variety of forums. In re Four Seasons Sec. Laws Litig., 502 F.2d 834, 843 (10th Cir.), cert. denied, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974). But "since the bankruptcy court has complete control over the bankrupt's estate, there really is little reason to fear multiple or repetitious litigation." 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1754, at 56 (1986). Accord In re Society of the Divine Savior, 15 Fed.R.Serv.2d (Callaghan) at 298. A bankruptcy proceeding is equipped to resolve multiple claims against that estate. There is no need for the class to file as a class.
 
 
 26
 This result is supported by the overwhelming majority of those bankruptcy courts that have been asked to allow a class proof of claim. The published decisions have rejected uniformly class proofs of claim. In re Electronic Theatre Restaurants Corp., 57 B.R. 147 (Bankr.N.D.Ohio 1986); In re Johns-Manville Corp., 53 B.R. 346 (Bankr.S.D.N.Y.1985); In re Baldwin-United Corp., 52 B.R. 146 (Bankr.S.D.Ohio 1985); In re Computer Devices, Inc., 51 B.R. 471 (Bankr.D.Mass.1985); In re Grocerland Coop., Inc., 32 B.R. 427 (Bankr.N.D.Ill.1983); In re Shulman Transp. Enters., Inc., 21 B.R. 548 (Bankr.S.D.N.Y.1982), aff'd, 33 B.R. 383 (S.D.N.Y.1983), aff'd, 744 F.2d 293 (2d Cir.1984); In re Society of the Divine Savior, 15 Fed.R.Serv.2d (Callaghan) 294 (E.D.Wis.1971). The SEC and Sheftelman cite to three unpublished cases in which a bankruptcy court has allowed a class proof of claim. One of those decisions has since been reversed on appeal, with the district court concluding that class proofs of claim are not permissible. In re American Reserve Corp., 71 B.R. 32 (N.D.Ill.1987), rev'g, No. 80 B 4786 (Bankr.N.D.Ill. Apr. 12, 1985). In another instance the trustees did not contest a class proof of claim. In re Dolly Madison Indus., Inc., Nos. 70-354 to 70-367 (E.D.Pa.1970), cited in In re GAC Corp., 6 B.R. 981, 988 (S.D.Fla.1980), aff'd, 681 F.2d 1295 (11th Cir.1982). We are left, then, with one unpublished decision allowing a class proof of claim over the objection of the debtor. In re Wickes Cos., Inc., No. LA-82-06657-WL (Bankr.C.D.Cal. July 15, 1983). See also Wohlmuth, The Class Action and Bankruptcy: Tracking the Evolution of a Legal Principle, 21 UCLA L.Rev. 577, 591, 597 (1973) (arguing that class proofs of claim should be allowed). We join those bankruptcy courts that have refused to allow class proofs of claim. We therefore affirm the judgments of the district and bankruptcy courts.
 
 III.
 
 27
 We need not consider Sheftelman's objections to the sufficiency of the notice of the bar date. Sheftelman argues that the bankruptcy court erred in dismissing his claim for failure to show cause for not filing a proof of claim before the bar date, contending that the inadequacy of the notice of the bar date provides a cause for its extension. Because we have affirmed the dismissal of Sheftelman's claim on the alternative ground that he violated the protective order, we need not consider the sufficiency of the notice given to Sheftelman. See Kennedy v. Tallant, 710 F.2d 711, 716 n. 3 (11th Cir.1983) (affirmance of the district court's decision on one basis makes it unnecessary to consider an alternative basis). Sheftelman further argues that the class received inadequate notice of the bar date. We have held, however, that Sheftelman has not been authorized to represent the members of the class in this bankruptcy proceeding. Therefore, Sheftelman cannot object to the sufficiency of the notice that was provided to other bond purchasers. We will not decide the adequacy of the notice provided to bond purchasers who are not before this court.
 
 
 28
 AFFIRMED.
 
 SETH, Circuit Judge, dissenting:
 
 29
 I regret that I must dissent from the position taken by the majority on this appeal.
 
 
 30
 My concern is that we should consider basic issues of due process and statutory requirements as to notice to creditors which have been raised in this appeal rather than to dispose of the case on procedural matters which arose along the way. If the basic issues are not decided, there remain erroneous rulings by the district court as to the debtor's burden to schedule and notify creditors who are known to the bankruptcy court and the debtor. Thus it appears that the procedural disposition by the majority can be read as a decision by us that the notice issue was correctly decided by the trial court.
 
 
 31
 The factual context of the notice issue makes it a particularly critical problem. This is for the reason that the existence of the group of unscheduled creditors and the nature of their security fraud claims against the debtor involving funds from bond sales which the debtor received from companies it controlled, was fully described in the motions and claims filed in the bankruptcy court. The problem was thus placed before the bankruptcy judge. It was not an abstract "notice to whom" problem, and in my view it does not matter that much how the claims were filed or by whom.
 
 
 32
 The failure of the bankruptcy judge to take some action to permit a consideration of the claims should be examined. The bankruptcy judge at least should have extended the bar date for these creditors regardless of the subsequent procedural failures by Mr. Sheftelman. We do not have an academic question of publication of notice in all national corporate cases, but instead an issue as to the avoidance by the trial court and bankruptcy court of a serious fraud challenge from a particular group based on filings in the bankruptcy court and brought to the attention of the courts.
 
 
 33
 The issue was introduced in the proceedings early on and should not have been eliminated by the sanctions against Mr. Sheftelman by reason of his absence nor by the nature of the submission he made. The application of sanctions as a ground for disposition by the trial court would not seem to remove the creditor-notice issue from the proceedings, nor would an application of technical requirements for filing a claim against creditors who did not have notice remove the problem. Instead the preexisting basic issue of the absolute burden of the debtor to list and to notify "all creditors" and the obligation of the bankruptcy and trial judge to see that the duty was performed both remained unresolved. Mr. Sheftelman was disposed of procedurally but the issues remained unresolved.
 
 
 34
 Some description of the sequence of events would seem to be useful. The bankruptcy judge knew after the claims Mr. Sheftelman filed on August 30, 1984 that fraud claims were made against these companies in a New Jersey suit. This suit was filed August 8, 1984 or about two months before Standard filed its first plan under Chapter 11. Standard was not a party to the New Jersey suit because of the automatic stay. The claim filed in the bankruptcy suit here concerned made the same fraud allegations as were made in the New Jersey suit. The class action certification was not made in the New Jersey suit until May 1985. The claim was filed after the bar date (June 10) set by the bankruptcy court, but there were proceedings pending in the court on motions for extension of time for proofs and for notice to bondholders. These were pending through January 1985 and March 1985. Mr. Sheftelman had waited some five months after filing his claim to file a motion to extend the bar date. Hearings on pending motions were set for a March 1985 date and this appeal was taken from orders entered thereafter.
 
 
 35
 The bankruptcy judge had in the Chapter 11 proceedings assertions--the claims of the bondholders against the debtor--from September 1984 to March 1985 as active pending issues. These, as mentioned, asserted that the debtor fraudulently obtained possession of the money these persons had paid for bonds issued by a company over which the debtor had control.
 
 
 36
 The indenture trustee was responsible for making interest payments to bondholders and had names and addresses. These unscheduled creditors, and there seems to be no serious challenge to classifying them as "creditors" under the "new" definition (Rule 2002(a)), did make known to the court the fact that they did assert securities fraud claims against the debtor, made known their identity as a certain group of bondholders and made known the exact nature of their claims. They should, despite a previously established bar date, be given an opportunity for a further submission of their position. The consequence of the trial court's rulings is to release the debtor from its burden to list and give notice to its creditors and to permit the ultimate discharge of the debtor without a consideration of unscheduled claims brought before the court and to create serious doubt as to any plan of reorganization and discharge.
 
 
 37
 The Code, 11 U.S.C. Sec. 521, is very specific in placing a duty on the debtor to file a list of creditors and provide a schedule of liabilities. This is an absolute duty and more than a good faith attempt is required. The definition of a "creditor" has been much expanded, and Rule 2002(a) requires that all creditors must be given notice.
 
 
 38
 The trial courts here decided that notice need only be given to scheduled creditors. There were thus both statutory and due process problems. See our Reliable Electric Co. v. Olson Const. Co., 726 F.2d 620 (10th Cir.), and Broomall Industries v. Data Design Logic Systems, 786 F.2d 401 (Fed.Cir.).
 
 
 39
 The Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, considered proper and adequate notice as the essential element in due process examination. This was carried over into bankruptcy proceedings in City of New York v. New York, New Haven & Hartford Railroad Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333.
 
 
 40
 It is understandable that the debtor would hesitate to send notices to the bondholders here concerned who were asserting fraud claims that involved the debtor. Perhaps it should not be expected that a classification of the bondholders as claimants under these circumstances would be made by the debtor. By reason of the nature of the claims the bankruptcy judge had a greater duty and should have required notice and to have extended the bar date despite the subsequent failings of Mr. Sheftelman. It was then apparent that the debtor had violated the Act in not listing these creditors, and the due process problem was an obvious threat to destroy any plan of reorganization.
 
 
 41
 I cannot agree with the position taken by the district court and its ruling that known creditors, if originally unscheduled, need not be notified and given a chance to file when they become obvious. The burden must instead be on the debtor to properly schedule and should not be shifted to the creditors. The debtor is receiving the benefits of the proceeding and should comply with the rules or made to comply.
 
 
 42
 With the failure to conform to the basic requirements and with the due process problems arising from the notice failure, it is difficult to see how the bankruptcy court could approve a plan or to order a discharge which would be effective.
 
 
 43
 The majority opinion considers only the position of Mr. Sheftelman and examines only the procedural problems and sanctions. I believe we are obligated to consider instead the basic issues.
 
 
 44
 The class action claims point is a secondary issue to the rule violation and the due process problems. Equally serious problems arise as to whether the class action claims issue is really present on this appeal. It may be a question of law in cases without fundamental problems; however, the district court expressly refused to rule on it and thus the bankruptcy judge's ruling on the issue was not affirmed.
 
 
 45
 I would reverse.
 
 
 
 [1]
 Sheftelman filed a class action against NL Industries, Hereth, Orr & Jones, Inc., Robert Puckett and Edward L. Puckett in federal district court in New Jersey on behalf of all of the purchasers of the bonds on August 8, 1984, three weeks before he filed the class proofs of claim in Standard's bankruptcy proceeding in Colorado. Sheftelman v. NL Indus., Inc., No. 84-3199 (D.N.J. filed Aug. 8, 1984). The civil suit raised the same allegations as the proof of claim filed in the bankruptcy court. Standard was not named as a defendant in the New Jersey suit because of the automatic stay imposed in the bankruptcy proceeding. The class was subsequently certified for the civil suit in New Jersey on May 8, 1985
 
 
 [2]
 Sheftelman died during the pendency of this appeal. Sandra Centeio, the executrix of Sheftelman's estate, has filed a motion in this court to be substituted as the appellant in this case. We grant that motion and treat Centeio as the appellant for the purposes of this opinion
 
 
 [3]
 Sheftelman correctly observes that he was entitled to use his deposition in lieu of personally attending the February 5 hearing. See Fed.R.Civ.P. 32(a)(3)(B). The bankruptcy court's protective order, however, required Sheftelman to attend the hearing only if he had not taken his deposition before that time
 
 
 [4]
 Sheftelman apparently believes that his deposition was to be for the narrow purpose of establishing that he did not receive notice of the bar date and that he did not know of his claims against Standard until after the bar date had passed. Accordingly, he suggested that an affidavit or a stipulation could satisfy this purpose. Standard, however, argues that the opportunity to cross-examine Sheftelman and to observe his demeanor would be essential in determining what he knew about the Standard bankruptcy proceeding and when he knew it
 
 
 [5]
 Belveal v. Heckler, 796 F.2d 1261 (10th Cir.1986), is not to the contrary. The plaintiffs in that case brought a class action challenging the termination of social security disability benefits. The district court refused to certify the class. We were confronted with a unique statutory provision:
 No class in a class action relating to medical improvement may be certified after September 19, 1984, if the class action seeks judicial review of a decision terminating entitlement (or a period of disability) made by the Secretary of Health and Human Services prior to September 19, 1984.
 Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, Sec. 2(d)(5), 98 Stat. 1794, 1798 (1984), quoted in Belveal, 796 F.2d at 1263 n. 5. When confronted with this explicit statutory command, we refused to order that a class be certified after the deadline imposed by the statute. We are presented with no such statutory bar in this case.
 
 
 [6]
 The Eleventh Circuit, while recognizing that "no provision of the Bankruptcy Act or the Bankruptcy Rules specifically authorizes the filing of a class proof of claim," concluded that it need not decide "whether a class proof of claim is ever allowable in a Chapter X proceeding." In re GAC Corp., 681 F.2d 1295, 1299 (11th Cir.1982)
 
 
 [7]
 Bankruptcy Rule 3003 governs the filing of proofs of claim or equity security interest in Chapter 9 and Chapter 11 cases. Rule 3003(c)(2) provides:
 Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule [allowing the court to fix the time within which proofs of claim must be filed]; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution. Under Rule 3003(c)(1), other creditors or an indenture trustee may, but need not, file a proof of claim. The National Bank of Georgia is the indenture trustee of the bond purchasers in this case. The Bank was listed as a scheduled creditor of NSNJ, the company for which the bonds were sold, but it was not listed as a creditor of Standard. We are not referred to any action that the Bank has taken in the Standard bankruptcy proceeding.
 
 
 [8]
 In Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Supreme Court allowed a class action to be brought by social security beneficiaries to enjoin the withholding of future benefits. The Court rejected the argument that a statutory provision authorizing suit by "any individual" precluded a suit from being brought on behalf of a class. The Court did not find "the necessary clear expression of congressional intent to exempt actions brought under [the] statute from the operation of the Federal Rules of Civil Procedure." Id. at 700, 99 S.Ct. at 2557. In a contested bankruptcy proceeding, however, the Federal Rules of Civil Procedure are not generally applicable; their use in many instances is left to the discretion of the court. Bankruptcy Rule 9014
 
 
 [9]
 Bankruptcy Rules 3004 and 3005 provide exceptions to the general command of Rule 3001(b), but it is not argued that either exception is applicable in this case
 
 
 [10]
 We are careful to distinguish between the permissibility of class proofs of claim and the availability of class action procedures to a group of individually filed proofs of claim. Bankruptcy Rule 7023 provides that the rule governing class actions in federal court, Fed.R.Civ.P. 23, applies in adversary proceedings in a bankruptcy court. The bankruptcy judge has discretion to decide whether to apply Rule 7023, and thus Fed.R.Civ.P. 23, in a contested matter. Bankruptcy Rule 9014. We recognize, however, that "[t]he issue of whether class proofs of claim are possible under the Code and the Rules is really a separate issue from whether Rule 7023 should be applied in a contested matter." Note, Class Actions in Bankruptcy, 64 Tex.L.Rev. 791, 799 n. 67 (1985). We decide only the former issue in this case
 Sheftelman filed a motion in the bankruptcy court to have Bankruptcy Rule 7023, and thus Fed.R.Civ.P. 23, apply in this case. The court denied this motion because the members of the purported class had not filed individual proofs of claim. The SEC now argues that Sheftelman was denied an opportunity to show that he was acting as an agent for all of the bond purchasers because the bankruptcy court refused to order that Fed.R.Civ.P. 23 be applied in this case. We fail to see how a ruling that Rule 23 was applicable would have enabled Sheftelman to demonstrate his agency status. Rule 23 does not add to the authority of a class representative until a class has been certified. As we have shown, the authority to act for a class pursuant to Rule 23 does not imply an authorization to file a proof of claim for an individual in a bankruptcy proceeding.